[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff in the above-entitled matter has flied this summary process action alleging non-payment of rent and seeking possession of the premises located at 286 Branford Avenue, Groton, Connecticut.
The plaintiff served the defendant with a notice to quit on August 29, 2000. On September 11, 2000, the plaintiff served the defendant with a summons and complaint bearing the return date of September 25, 2000. The defendant filed a pro se appearance and her answer to the complaint on September 25, 2000.
A trial was held before this court on October 17, 2000. The plaintiff appeared through counsel and the defendant appeared pro se. The court finds that both parties received appropriate notice of the proceeding. Deborah Mathis, an assistant manager at Branford Manor, testified for the plaintiff at trial, and the defendant testified on her own behalf The plaintiff introduced four exhibits into evidence at trial and the CT Page 13061 defendant offered one exhibit.
 FACTUAL FINDINGS
The court finds that the following facts were proven by a preponderance of the evidence at trial:
On July 18, 2000, the parties entered into a written lease wherein the plaintiff agreed to rent the premises at 286 Branford Avenue in Groton to the defendant for a period of one year. (Plaintiff's Exhibit 1). The defendant agreed to pay rent in the amount of $149 for the period of July 18-July 31. The defendant also promised to pay rent in the amount of $320 per month thereafter. The first full rental payment was due on August 1, 2000. (Plaintiff's Exhibit 1).
The defendant's rent was subsidized under a program operated by the Department of Housing and Urban Development (HUD). Pursuant to this arrangement, the plaintiff was to receive the additional sum of $200 each month from HUD towards a total rental amount of $520 monthly for the defendant's apartment.
The defendant took occupancy at 286 Branford Avenue on July 18, 2000, and still remains in possession of those premises.
The defendant did not pay the rent of $320 which was due on August 1, 2000. On August 10, 2000, the plaintiff wrote to the defendant informing her that eviction proceedings would be initiated unless her account was brought current by August 28, 2000. (Exhibit A to plaintiffs complaint). The plaintiffs letter indicated that the outstanding rent was $320 ". . . . plus additional late charges in the amount of $25 . . ." It further stated that if the $320 rental payment was still unpaid as of August 28, ". . . HUD will be notified and your section 8 benefits will be terminated. The new rent will be at the basic of $520 monthly." (Exhibit A to plaintiffs complaint.)
The defendant had not paid the rent by August 29, 2000. On that date, the plaintiff served the defendant with the notice to quit. It read in part: "The amount of money currently owed to Branford Manor Apartments is $320 for August 2000 Rent, $25.00 late charges, and Legal Fees; for a total of $450.00." (Notice to Quit dated August 29, 2000). Although the specific amount of the legal fees demanded was not enumerated in the notice, it was apparently $105.
The notice to quit indicated that Branford Manor intended to terminate defendant's lease as of "September 09, 2000." It also stated:
CT Page 13062 "Please be advised that any monies received by your Landlord after the above date will only be accepted as use and occupancy or attorneys fees and costs, without waiving any rights to continue the eviction." (Notice to Quit dated August 29, 2000).
The defendant testified that she became ill in June and took a leave of absence from her employment as a hostess at a local casino. She admitted on cross examination that she had listed her employment on the rental application when she signed the lease in July, but also explained that this was because she was on a leave of absence, and expected to return to her job once she recuperated. The defendant also testified that she spoke to personnel at Branford Manor and explained her circumstances shortly after she took occupancy. At that time, she requested recertification of the amount of rent she would personally be required to pay under the HUD program. In August, the defendant, who is a single mother, attempted to obtain financial assistance from Groton and the State of Connecticut. The court found the defendant's testimony to be credible. It was partially corroborated by a written note from Branford Manor under date of July 26, 2000. (Defendant's Exhibit A). The document lists "recertification" as its subject. It states: "We are still waiting for your State paper. We need it asap." (Defendant's Exhibit A). The document establishes that within eight days of the date that the defendant signed her lease, she had advised the plaintiff of her change in circumstances and requested HUD recertification.
The defendant had no income in July and received state assistance income of $149 in August. On September 9, 2000 — the terminal date indicated in plaintiffs notice to quit — the defendant obtained two money orders made payable to Branford Manor in the amount of $320 and $121. (Plaintiff's Exhibit 2). The defendant testified that she deposited those money orders in the landlord's overnight depository at Branford Manor on September 9, 2000. The court finds the defendant's testimony on this issue to be credible, and accepts it as fact. On September 11, 2000, the plaintiff returned the two money orders to the defendant. In an accompanying note, Branford Manor wrote: "We do not accept partial payments. Your Eviction payment was for $450. We cannot accept this payment." (Plaintiff's Exhibit 3).
The plaintiff's position is that the defendant's payment of $441 on September 9 (which was $9 short of the $450 amount it demanded for the August rent, a late charge and counsel fees) was only a partial payment of rent which it had the right to reject.
The court finds that the sums submitted to the plaintiff on September 9 were timely under the notice to quit. Accordingly, the issues which CT Page 13063 remain are whether or not the plaintiff was contractually permitted to demand the counsel fees and late charges, and whether or not the defendant's failure to pay the $450 sum constituted non-payment of rent.
As noted above, a copy of the parties' lease was entered into evidence as Plaintiff's Exhibit 1. The court has carefully reviewed that seven-page document. The copy of the lease which was submitted into evidence appears to be missing several lines of the agreement's text. However, paragraph 5 on the first page of the lease is crucial to the resolution of this matter. That clause is entitled "Charges for Late Payments and Returned Checks." It states:
 "If the Tenant does not pay the full amount of the rent shown in paragraph 3 by the end of the 15th day of the month, the Landlord may collect a fee of $25.00 on the 16th day of the month. The landlord may not terminate this Agreement for failure to pay late charges, but may terminate this agreement for non-payment of rent as explained in paragraph 23. The Landlord may collect a fee of $2.00 on the second or any additional time a check is not honored for payment (bounces). The charges discussed in this paragraph are in addition to the regular monthly rent payable by the tenant." (Plaintiff's Exhibit 1).
Paragraph 3 of the lease lists the defendant's regular monthly rent as $320 per month. Paragraph 23 lists "repeated late payment of rent" as a ground for termination of the lease. There does not appear to be any provision of the lease dealing with attorneys fees. The agreement does not indicate what counsel fees, if any, may be assessed against the defendant, or how they would be computed. It does not contain a provision which specifies that failure to pay counsel fees would constitute non-payment of rent.
Based on the evidence presented, the court does not find the defendant was required to pay the additional sum of $105 for counsel fees as rent by September 9, 2000. The court finds, by a preponderance of the evidence, that the defendant paid the rent on September 9 and that the plaintiff erred in rejecting the money offered as a partial payment. Accordingly, the plaintiff has failed to prove non-payment of rent as alleged in its complaint.
The court also refers to paragraph 16 of the parties' lease. The evidence in this case established that the defendant reported the decrease in her income to the plaintiff during July. Under the terms of CT Page 13064 paragraph 16, the plaintiff was obligated to verify the information and make a rent reduction in the amount of the rent defendant was required to pay. Or, Wit appeared that the tenant's income would be partially or fully restored within two months, the landlord could demand the full amount of rent, award a retroactive rent reduction later, and refrain from evicting the tenant for non-payment during the period of the reported decrease until the certification process had been completed. (Plaintiff's Exhibit 1, Paragraph 16).
Since the plaintiff demanded August rent of $320 in the notice to quit, it would appear that the recertification process had not been completed, and this action may have been untimely under the provisions of paragraph 16.
Because the court finds that the plaintiff has failed to prove non-payment of rent by a preponderance of the evidence, judgment may enter in favor of the defendant.
BY THE COURT:
 Dyer, J.